UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**KELVIN W. REED**                                                                                                  **PLAINTIFF**

v.                                                     **CIVIL ACTION NO. 3:07CV-454-R**

**OFFICER KIMBERLY CARTY** *et al.*                                            **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court for *sua sponte* screening of the complaint pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the instant action will be dismissed.

### I. SUMMARY OF CLAIMS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against the following four Defendants in their individual and official capacities: Louisville Metro Police Officers Kimberly Carty and Chadrick Crick; Louisville Metro Police Chief Robert White; and Louisville Metro Mayor Jerry Abramson. Plaintiff claims that Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution, and, as relief, he seeks monetary and punitive damages.

Plaintiff alleges that on or about October 4, 2005, Officers Carty and Crick executed an unlawful stop of his person. He claims that Officer Carty instructed him to step out of his vehicle; conducted a pat search of his person; and asked if he had any weapons in his vehicle. According to Plaintiff, when he answered that he did not know whether there were any weapons, Officer Carty, without consent, searched the vehicle. He contends that Officer Carty pulled him over because she claimed to have observed a confrontation between Plaintiff and a white female and that Plaintiff allegedly fled the scene, although Plaintiff advises that he was not charged with fleeing or any other criminal action allegedly observed by Officer Carty.

Plaintiff reports that he was booked into jail; posted bail; and was released on October 5, 2005. On the following day, he reported to his parole officer and was arrested for violating the conditions of his parole. (Plaintiff's parole was later revoked, and he was returned to prison because of the allegedly unlawful stop.) On November 15, 2005, all charges from the stop were dismissed in the district court, but in February 2006 Plaintiff was indicted on all charges related to the stop. On February 13, 2007, "the Felony charge from this incident under this indictment was dismissed, and Plaintiff subsequently accepted a plea offer to the misdemeanors an[d] was credited with time served to run concurren[]t with his present sentence that he was now back in on having to serve on."[1]

Plaintiff claims that Officer Crick assisted Officer Carty in the stop; falsely testified at his parole revocation hearing along with Officer Carty; and falsely testified before the grand jury.

Plaintiff sues Defendant Police Chief White based on his "superior command" of the officers and sues Defendant Mayor Abramson, "who is responsible for the hiring of Louisville Metro Police Department commanders and it's officers."

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e)(2); *McGore*, 114 F.3d at 608-09. Upon review, this Court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

---

[1] By Notice filed October 20, 2008 (DN 6), Plaintiff advises that he has been released from incarceration.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, __,127 S. Ct. 1955, 1965 (2007) (internal citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citations omitted; alteration in *Twombly*). In reviewing a complaint under this standard, the Court must construe the pleading in the light most favorable to Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  ANALYSIS

**A.     All official-capacity claims**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official capacity claims against Defendants are, therefore, actually against the Louisville Metro Government.  *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

In the instant case, Plaintiff has not alleged that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm. As nothing in the complaint demonstrates that Defendants' actions occurred as a result of a policy or custom implemented or endorsed by Louisville Metro Government, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim. Accordingly, the official-capacity claims against all Defendants will be dismissed.

**B.**     **Individual-capacity claims**

   **1. Chief White and Mayor Abramson**

Plaintiff seeks to hold Defendants White and Abramson liable based on their positions as Chief of Police and Mayor, respectively. The doctrine of respondeat superior, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*,

436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998).

Here, Plaintiff fails to demonstrate any facts showing that Chief White or Mayor Abramson encouraged any specific incidents or implicitly authorized, approved or knowingly acquiesced to any unconstitutional conduct. Accordingly, the individual-capacity claims against those Defendants must be dismissed for failure to state a claim upon which relie may be granted.

### 2. Officers Carty and Crick

#### a. Claims of misleading and false testimony

"It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)); *Todd v. Weltman, Weinberg & Reis Co.*,

6

*L.P.A.*, 434 F.3d 432, 442 (6th Cir. 2006) ("[A]bsolute witness immunity applies to witness testimony before a grand jury."). "Thus, it is clear that [Defendants Carty and Crick] would be insulated from liability for any testimony that [they] provided as a witness at trial, no matter how egregious or perjurious that testimony was alleged to have been." *Spurlock*, 167 F.3d at 1001. Accordingly, Plaintiff's Fourteenth Amendment claims related to the giving of allegedly misleading and false testimony will be dismissed.

### b. Claims arising out of allegedly illegal stop

#### i. Equal protection

The statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. Ann. § 413.140(1). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990). Although state law establishes the statute of limitations for § 1983 actions, federal law controls on the issue of when the statute of limitations begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). Federal law establishes that the § 1983 statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir.2001).

The Supreme Court has recently held that when the face of the complaint shows that an action is time barred, the case may be dismissed summarily upon screening. *Jones v. Bock*, 549 U.S. 199, __, 127 S. Ct. 910, 920-21 (2007).

Plaintiff alleges that Officer Carty violated the Equal Protection Clause when she pulled him over on October 4, 2005, after allegedly lying that she observed Plaintiff and the white woman engaged in a confrontation. Plaintiff's Fourteenth Amendment equal protection claim,

7

therefore, accrued at the time of the stop on October 4, 2005. Because Plaintiff did not file the complaint until July 30, 2007,[2] the equal protection claim is time barred and must be dismissed.

### ii. *False arrest*

In *Wallace v. Kato*, the United States Supreme Court held that, "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. 384, 397 (2007); *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) ("[T]he Court in *Wallace* specifically held that a claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends.").

Plaintiff reports that he was booked into jail on October 5, 2005; that he was released on bail on that date; and that the charges were dismissed by the district court in November 2005. By not filing the complaint until July 2007, Plaintiff's Fourth Amendment false arrest claims are untimely. Even considering the later February 2006 date in which Plaintiff was indicted, Plaintiff's claims are untimely. To be sure, because Plaintiff was indicted in February 2006, pursuant to Local Rules of the Jefferson Circuit Court, the arraignment (or, in other words, the time of Plaintiff's detention pursuant to legal process) necessarily occurred shortly thereafter, likely no later than the end of March 2006. *See* KY. R. JEFFERSON CIR. CT. Rule 801A ("Arraignments for all indictments returned by the Grand Jury shall be held at the next motion hour for the division where the case has been allotted unless otherwise ordered by the Court.").

---

[2]Under the "prison mailbox rule," "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Plaintiff certifies that the complaint was delivered to the prisoner mail system for mailing on July 30, 2007.

Because Plaintiff did not file his complaint until over a year later on July 30, 2007, the Fourth Amendment false arrest claims are time barred and must be dismissed.

The Court will enter a separate Order consistent with this Memorandum Opinion.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
4413.005